U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 1 4 2013

CLERK, U.S. DISTRICT COURT
By _____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLARENCE D. BROWN,                §
                                  §
          Plaintiff,              §
                                  §
                                  §
VS.                               §   NO. 4:12-CV-698-A
                                  §
ALLISON TAYLOR, ET AL.,           §
                                  §
          Defendants.             §

MEMORANDUM OPINION
and
ORDER

Now before the court for consideration is a complaint
pursuant to 42 U.S.C. § 1983 filed in the above-captioned action
by plaintiff, Clarence D. Brown, naming as defendants:  Allison
Taylor ("Taylor"), executive director of the Office of Violent
Sex Offender Management ("OVSOM"); Diana Lemon ("Lemon"), program
specialist and case manager in OVSOM; Brian Costello
("Costello"), president of Avalon Correctional Services, Inc.
("Avalon"); Greg Basham ("Basham"), faculty administrator for
Avalon; Carlos Morales, faculty administrator for Avalon.
Plaintiff filed two supplements[1] to his complaint, adding as
defendants: Clemmy Washington ("Washington"), program specialist
and program manager in OVSOM; Dee Anderson ("Anderson"), sheriff

---

[1] Plaintiff's filed his second supplement as a "Motion to Supplement."

of Tarrant County, Texas; the Tarrant County Commissioner's Court

("TCCC"); individual TCCC commissioners Roy Brooks ("Brooks"),

Andy Nguyen ("Nguyen"), and J.D. Johnson ("Johnson"); the

Montgomery County Commissioner's Court ("MCCC"); individual MCCC

commissioners Ed Chance ("Chance"), Ed Rinehart ("Rinehart"),

Allen Sadler ("Sadler"), Mike Meador ("Meador"), and Craig Doyal

("Doyal").  Plaintiff sues each individual defendant in his or

her official and individual capacity.  Plaintiff also filed a

motion for injunctive relief, a motion to compel OVSOM to comply

with plaintiff's right to a law library, and a motion for

appointment of counsel.  Having reviewed all of plaintiff's

filings and applicable legal authorities, the court concludes

that the complaint fails to state a claim upon which relief may

be granted and should be dismissed, and that plaintiff's above-

described motions should be denied.[2]

I.

Background

Plaintiff was convicted of sexual assault in Texas, and

served a term of imprisonment of approximately fifteen years,

ending in October 2011.  Following his term of imprisonment,

---

[2] The court grants plaintiff's motion to supplement to the extent that the court included the defendants named in the motion and considered the contents of the motion in the analysis of plaintiff's claims.

plaintiff was civilly committed by the State of Texas as a sexually violent predator under sections 841.001-841.151 of the Texas Health and Safety Code, and his commitment was upheld on appeal. In re Commitment of Clarence Dewayne Brown, No. 09-10-00589-CV, 2012 WL 4466348 (Tex. App.--Beaumont Sept. 27, 2012, pet. denied). Plaintiff now "challenges the nature and conditions of confinement and the manner of implementation of the outpatient civil commitment program." Compl. at 6. Plaintiff's allegations are contained in a forty-nine-page original complaint, a sixteen-page supplement, a two-page supplement, and plaintiff's motion for injunctive relief.

## II.

### Plaintiff's Claims

Plaintiff asserts the following causes of action against various defendants:[3] (1) violation of substantive due process for failing to provide adequate conditions of confinement and mental health treatment, and for retaliation against plaintiff for exercising his rights under the First Amendment; (2) unconstitutional punishment in violation of the Fourteenth Amendment for housing plaintiff in the same facility as individuals who are on parole, for failing to release plaintiff

---

[3] The court addresses which defendants are sued under which causes of action, where applicable, in the analysis of each claim.

3

after he had completed his term of imprisonment in his criminal case, and for subjecting plaintiff to sanctions for failing to comply with rules; (3) deprivation of procedural due process for housing plaintiff in facilities that are not "outpatient" facilities, housing plaintiff with individuals who have fewer restrictions on their liberty, and subjecting plaintiff to "onerous and punitive" requirements; (4) violation of the right to equal protection for housing plaintiff with individuals who have fewer restrictions on their liberty; (5) deprivation of liberty and property interest for subjecting plaintiff to threats of arrest and prosecution, for limiting plaintiff's contact with other individuals, for failing to allow a sufficient "window" of time for plaintiff to leave the facility to receive medical treatment, for failing to provide a law library, and for limiting plaintiff's ability to leave the facility; (6) retaliation against plaintiff for exercising his First and Fourteenth Amendment rights; (7) failure to prevent unlawful deprivation of plaintiff's civil rights; (8) failure to provide "genuine 'outpatient' conditions" as required by the Texas Health and Safety Code; (9) unlawful confinement under Texas law for failing to release plaintiff after he had served his prison sentence; (10) unlawful arrest and confinement under Texas law and the Fourteenth Amendment for arresting and confining plaintiff for

4

his violation of commitment rules; and (11) retaliation and malicious prosecution for plaintiff's exercise of his First Amendment rights.

Plaintiff seeks a declaratory judgment that § 841.085 of the Health and Safety code "is constitutionally invalid in that it is vague, overbroad, punitive and is poorly and unconstitutionally defined," Compl. at 44, and that plaintiff was denied his constitutional rights. Plaintiff seeks to enjoin defendants from punishing or retaliating against plaintiff for his exercise of constitutional rights, requiring defendant to provide adequate transportation to a law library, enjoining defendants from violating plaintiff's rights, and requiring various modifications to the civil commitment program. Plaintiff also seeks monetary damages in varying amounts from Taylor, Lemon, Basham, Costello, Morales, Washington, Anderson, TCCC, and MCCC.

III.

Facts Alleged by Plaintiff

Plaintiff's complaint, supplements, and motion make the following relevant factual allegations:

Sometime after plaintiff's term of imprisonment expired and he had been civilly committed, around October 26, 2011, plaintiff was transported to El Paso, Texas, and placed at a multi-use facility operated by Avalon under contract with the Texas

5

Department of Criminal Justice ("TDCJ").  The facility houses "prisoners/parolees as well as civil commitment clients" and all of these individuals share community areas such as bathrooms and cafeterias.  Compl. at 8, 16.  The facility "is surrounded by razor wire" and is equipped with surveillance cameras; plaintiff was not permitted to leave the facility except for program-related treatment and medical treatment.  Plaintiff was subjected to urinalysis and breathalyzer tests at various times, and was prohibited from seeking employment but forced to pay medical and dental expenses.  He also was required to pay for transportation to activities that were not program-related or medical in nature, and was required to use funds sent by family for his needs.  Once, Lemon confiscated correspondence received by plaintiff "due to the person not being on plaintiff's approved list."  Compl. at 20.

On January 2, 2012, plaintiff suffered a broken tooth and could not visit the dentist because he did not have adequate funds.  Plaintiff "was refused by defendant Lemon" to seek dental care.  Compl. at 27.  Plaintiff was not provided with temporary pain relief, and visited a local dental clinic 37 days later.  During the 37 days, plaintiff was not permitted to leave the facility to purchase over-the-counter pain medication.

While he resided at the El Paso facility, plaintiff brought

6

various grievances regarding living conditions, perceived
harassment from staff members, and inadequate grievance
procedures at the facility. Plaintiff contacted attorneys, but
was "denied attorney client confidentiality by Avalon staff on
numerous occasions." Compl. at 9. In February 2012, plaintiff
was moved to an area in the facility that did not have adequate
electrical outlets, and when he complained, "the retaliation
became worse," and his legal documents were "rifled through" by
unknown individuals. Id. Plaintiff sent a letter to Avalon's
home office stating that he intended to file a lawsuit against
the company. Shortly thereafter, plaintiff spoke with Lemon, who
informed plaintiff that he had signed an agreement to follow
Avalon's rules, which meant that he had to follow Avalon's
grievance procedures, and that it would be a violation for
plaintiff to send any more letters to Avalon's home office. A
representative from Avalon visited plaintiff's facility, spoke
with plaintiff, and concluded that plaintiff's grievances were
frivolous. At that time, plaintiff learned that Costello had
become president of Avalon, and plaintiff then decided to write a
letter to Costello and to another individual threatening to sue
Avalon. On March 8, 2012, plaintiff was transferred to a
facility in Fort Worth, Texas.

Upon arriving in Fort Worth, plaintiff met Washington to go

over paperwork, and then was assigned to a room that housed six individuals and did not have an area where plaintiff thought he could store his belongings adequately.  Plaintiff met with a person named Ms. Garcia, who provided plaintiff with orientation paperwork that plaintiff took back to his living area to read. Shortly thereafter, security personnel asked plaintiff for the paperwork, and informed plaintiff that he was required to sign the paperwork whether he agreed with the rules or not, as part of the terms of his civil commitment.  Plaintiff informed security that he "needed better clarification" of the rules before signing the paperwork, and would not sign the paperwork at that time.  A case manager was contacted and informed plaintiff that he would assist with clarification, but plaintiff was told by a person named Mr. Serrano ("Serrano") that plaintiff could not wait for the case manager before signing the paperwork.  Plaintiff refused to abide by Serrano's instructions and refused to sign the paperwork.  Shortly thereafter, plaintiff was informed that he would probably be arrested for violating the civil commitment rules, and was given trash bags in which to pack his belongings. Basham then came into plaintiff's living area and "began yelling and screaming that he would not tolerate plaintiff causing problems at his facility like he did in El Paso."  Compl. at 14.

On March 9, 2012, plaintiff was arrested for violating

8

conditions of civil commitment by failing to sign the intake
paperwork as required by the terms of the civil commitment, and
failing to obey a direct order from the halfway house staff to
complete the paperwork.  Plaintiff was then transferred to the
Tarrant County Jail.  At the jail, the lights remained on 20
hours per day depriving plaintiff of sleep; plaintiff had his
recreation restricted to two-to-three times per week; plaintiff
received only one jail uniform per week, lived in rooms with cold
temperatures, was housed with jail inmates, and did not have
access to a law library.  Plaintiff believed he would be released
on bail on September 13, 2012, prior to his trial, but he was
instead placed into another section of the jail.  On October 3,
2012, plaintiff was found not guilty of violating conditions of
civil commitment in the Criminal District Court No. 1, Tarrant
County, Texas.  He remained in the Tarrant County Jail until
November 7, 2012.  During his time at the jail, plaintiff sought
habeas relief from the Tarrant County District Clerk's Office,
and sent letters threatening legal action to TCCC and Anderson.

On November 7, 2012, plaintiff was transferred to the
Southeast Transitional Center in Houston, Texas, which houses
civilly committed sexually violent predators such as plaintiff.
A case manager at the facility warned plaintiff that if he
continued filing complaints and grievances, he could be

9

transferred to an "Intermediate Sanction Facility."  Plaintiff

was "threatened with ZERO TOLERANCE within the program," even

though he had not received prior written warnings.  Mot. at 3-4.

On November 20, 2012, plaintiff was informed by the case manager

and doctor that "he would have to start the whole program over

from the very beginning without any specific reasons that relates

to treatment purposes."  Id. at 4.

                              IV.

                   Applicable Law and Analysis

A.   Treatment of In Forma Pauperis Complaints

     Because plaintiff is proceeding in forma pauperis, his

complaint is subject to sua sponte dismissal under 28 U.S.C. §

1915(e)(2)(B).  Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir.

1986).  Section 1915(e)(2)(B) provides for sua sponte dismissal

if the court finds that the complaint is either frivolous or

fails to state a claim upon which relief may be granted.  A claim

is frivolous if it "lacks an arguable basis in either fact or

law."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A

complaint fails to state a claim upon which relief can be granted

when, assuming that all the allegations in the complaint are true

even if doubtful in fact, such allegations fail to raise a right

to relief above the speculative level.  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and

citations omitted).

In evaluating whether the complaint states a valid claim for relief, the court construes the allegations of the complaint favorably to the pleader.  Warth v. Seldin, 422 U.S. 490, 501 (1975).  However, the court does not accept conclusory allegations or unwarranted deductions of fact as true, and a plaintiff must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Twombly, 550 U.S. at 555; Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994).

Having now considered plaintiff's numerous claims and causes of action, the court concludes that the majority of plaintiff's complaint consists of conclusory allegations unsupported by specific facts to state a claim for relief under § 1983.  The specific facts alleged by plaintiff do not rise to the level of constitutional violations and, therefore, do not state a claim for relief under § 1983 and should be dismissed.

B.   Section 1983

Title 42 U.S.C. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

11

be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress,
except that in any action brought against a judicial
officer for an act or omission taken in such officer's
judicial capacity, injunctive relief shall not be
granted unless a declaratory decree was violated or
declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, to state a claim under § 1983, plaintiff
must allege specific facts showing that a person acting under
color of state law caused a deprivation of a constitutional
right. As an initial matter, certain individuals and entities
plaintiff purports to sue cannot be held liable under § 1983, and
the court addresses such individuals and entities prior to its
analysis of the merits of plaintiff's claims.

The Supreme Court has long recognized a broad absolute
judicial immunity to civil actions brought against judges for
their judicial acts, including actions brought pursuant to §
1983. Stump v. Sparkman, 435 U.S. 349, 355-56 (1978). Such
immunity can be lost only when a judge does not perform a
judicial act, or the judge acts in the "clear absence of all
jurisdiction." Id. (quoting Bradley v. Fisher, 13 Wall. 335, 351
(1872)). State and local legislative bodies and legislators also
enjoy absolute immunity for their legislative activities. Bogan
v. Scott-Harris, 523 U.S. 44, 48-49 (1998) (noting the "venerable
tradition" of such immunity).

Although plaintiff names TCCC, MCCC, and their respective

12

judges and commissioners as defendants, these defendants are not amenable to suit. The entity itself, as a governmental body, cannot be sued, and the individual judges and commissioners enjoy absolute immunity. Further, plaintiff alleges no facts whatsoever that could suggest any liability on the part of TCCC, MCCC, or any individual members of those entities. Thus, any claims plaintiff purports to bring against TCCC, MCCC, Brooks, Nguyen, Johnson, Chance, Rinehart, Sadler, Meador, and Doyal must be dismissed.

Additionally, plaintiff is barred by state sovereign immunity from seeking money damages against any individual defendant in this action in his or her official capacity. The Eleventh Amendment bars claims against a state filed pursuant to § 1983 seeking monetary damages. Aguilar v. Texas Dep't of Crim. Justice, 160 F.3d 1052, 1054 (5th Cir.1998). Section 1983 does not waive the state's sovereign immunity, and the State of Texas has not otherwise consented to be sued. Id. (citing Quern v. Jordan, 440 U.S. 332, 338 n. 7 (1979)). A suit against a state official in his or her official capacity is the equivalent of a suit against the state itself and is therefore barred. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). The Supreme Court created an exception to state sovereign immunity in Ex Parte Young, 209 U.S. 123 (1908), allowing a plaintiff to bring a

13

claim against a state official in his or her official capacity,
if the plaintiff is alleging a violation of federal law and
seeking only prospective injunctive relief.

Plaintiff has sued all individual defendants in their
individual and official capacities, and seeks injunctive relief,
a declaratory judgment, and money damages.  Under sovereign
immunity, his claims against each defendant in his or her
official capacity for money damages must be dismissed.  Each
individual he sues is a state official.  Plaintiff's claims
against Taylor, Lemon, Washington, Basham, Anderson, Costello,
and Morales in their official capacities[4] for prospective
injunctive relief, and his claims against those defendants in
their individual capacities and in their official capacities for
prospective injunctive relief, are discussed below.

C.   Claim I:  Violation of Substantive Due Process Regarding
     Conditions of Confinement

Plaintiff alleges that Taylor and Lemon failed to provide
plaintiff with adequate mental health treatment and conditions of
confinement, and alleges that Costello, Basham, and Morales
retaliated against plaintiff when plaintiff sought clarification

---

[4] Costello, Basham, and Morales are technically employed by Avalon; however, as officials carrying out a state function, and jointly participating with state officials, they are considered state actors for purposes of § 1983.  To the extent they may have an official state capacity, they cannot be sued for money damages in that capacity.  See West v. Atkins, 487 U.S. 42, 54-56 (1988); United States v. Classic, 313 U.S. 299, 326 (1941).

of the rules and refused to sign the intake paperwork in the Fort
Worth facility.  Plaintiff refers to conditions at El Paso and
Fort Worth, without stating any specific facts or even alluding
to any specific circumstances except for plaintiff's refusal to
sign the intake paperwork.  Thus, the court addresses plaintiff's
grievances regarding conditions at El Paso and Fort Worth, as
well as the issues surrounding plaintiff's refusal to sign intake
paperwork at the Fort Worth facility.

In the context of a civilly committed sexually violent
predator, "due process requires that the conditions and duration
of confinement under the Act bear some reasonable relation to the
purpose for which persons are committed." Seling v. Young, 531
U.S. 250, 265 (2001) (citing Foucha v. Louisiana, 504 U.S. 71, 79
(1992); Youngberg v. Romeo, 457 U.S. 307, 324 (1982); Jackson v.
Indiana, 406 U.S. 715, 738 (1972)).  The Court has repeatedly
upheld civil commitment programs and laws regarding sexually
violent predators that are similar to Texas's laws and programs.
See United States v. Comstock, 130 S. Ct. 1949 (2010); Kansas v.
Crane, 534 U.S. 407 (2002); Seling, 531 U.S. at 262, 267; Kansas
v. Hendricks, 521 U.S. 346 (1997).  Texas courts have also upheld
provisions for civil commitment of sexually violent predators and
implementation of the provisions.  See, e.g., In re Commitment of
Fisher, 164 S.W.3d 637 (Tex. 2005); Beasley v. Molett, 95 S.W.3d

590, 607-08 (Tex. App.--Beaumont 2002, pet. ref'd).

First, none of plaintiff's grievances regarding general facility conditions has merit under § 1983, as plaintiff fails to allege facts that can establish the violation of a constitutional right.  Plaintiff complains about being housed in the same facility as "prisoners/parolees" and that he was subjected to verbal and physical abuse because of his status as a sexually violent predator.  However, plaintiff alleges no specific facts regarding any abuse, such as what actually occurred, how or when it occurred, or what injuries he sustained.  He seems to contend simply that the unpleasant presence of "parolees/prisoners" at the facility amounts to punitive circumstances sufficient to invoke § 1983.  Plaintiff also complains that he was not permitted to leave the facility except for medical or program-related treatment, but that he was required to pay for transportation "to any engagement thats [sic] not medically or program related."  Next, he claims that he was not permitted to seek employment but was required to pay for medical care, but offers no facts to show that he was being denied necessary medical treatment.  He then alleges that he had a letter confiscated, and that someone had gone through his belongings. Finally, plaintiff repeatedly contends that he was subject to harassment and retaliation at El Paso, but provides no specific

16

facts to support such conclusory assertions.

All of plaintiff's above-mentioned assertions fail to allege a constitutional violation against any party, as all of the circumstances and policies of the program alleged by plaintiff "bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265.  Restrictions on contact with others, travel outside of the facility, and employment are reasonably related to the purpose of treating a sexually violent predator's disorder and protecting the public from a sexually violent predator.  It is also reasonable for a civilly committed individual to contribute to the costs of medical care and transportation to outside, non-program-related activities.  Additionally, plaintiff's conclusory assertion that he was subject to harm by individuals who are not civilly committed is insufficient to state a claim for relief.

Next, plaintiff contends that Costello, Basham, and Morales retaliated against him "for exercising his First Amendment right to address, seek clarification of prison rules prior to completing intake package with signature" by having plaintiff arrested for violating the rules of his civil commitment by refusing to sign the intake paperwork in Fort Worth.  Compl. at 30.  However, the fact that plaintiff was arrested and prosecuted for breaking the civil commitment rules does not state a claim

17

for a constitutional violation.  <u>See</u> <u>Allen v. Seiler</u>, No. 4:12-
CV-414-Y (N.D. Tex. Jan. 30, 2013); <u>Wilson v. Thaler</u>, No. H-12-
927, 2012 WL 3727133, at *5 (S.D. Tex. Aug. 27, 2012)
(determining that a prosecution and conviction of a sexually
violent predator for violating the terms of his civil commitment
did not amount to a constitutional violation).  It is a third-
degree felony in Texas for a person who has been "adjudicated and
civilly committed as a sexually violent predator" to violate the
requirements of the civil commitment.  Tex. Health & Safety Code
§§ 841.082, 841.085(a)-(b).  Plaintiff was told directly by
supervisors that he was required to sign the intake paperwork by
the terms of his civil commitment, and plaintiff directly
disobeyed the instructions and refused to sign the paperwork.
Plaintiff's own allegations demonstrate that he willingly chose
not to follow the instructions and chose to violate a rule.

Plaintiff complains that the rules he allegedly broke were
not specifically listed in the statute but were created by his
case managers, and argues that the rules are therefore unlawful.
However, the statutory scheme specifically provides that OVSOM
may approve a treatment plan for the committed person to be
developed by the treatment provider, and requires the committed
person's "participation in and compliance with a specific course
of treatment provided by the office and compliance with all

18

written requirements imposed by the case manager or otherwise by the office." Russell v. State, No. 2-11-478-CR, 2013 WL 626983, at *2 (Tex. App.--Fort Worth Feb. 21, 2013); Tex. Health & Safety Code §§ 841.082, 841.083. Plaintiff's allegations indicate that he failed to follow the rules of his civil commitment and was subject to arrest and prosecution as a result of the violation. Therefore, plaintiff has not stated a claim for a constitutional violation for the arrest and prosecution.

D.  Claim II: Unconstitutional Punishment

Plaintiff claims that the conditions of the El Paso facility, the fact that he was civilly committed rather than being released at the completion of his prison sentence, and the fact that he was arrested for refusing to comply with rules all amount to "unconstitutional punishment." The court has already considered the conditions at El Paso and the failure to comply with rules, supra IV.C. Plaintiff's contention that his civil commitment was unlawful has no merit, as courts have uniformly upheld the civil commitment of a sexually violent predator following a term of imprisonment. See Comstock, 130 S. Ct. 1949; In re Commitment of Shaw, 117 S.W.3d 520, 522 (Tex. App.-- Beaumont 2003, pet. ref'd). Thus, plaintiff's claim for unconstitutional punishment fails.

E.   <u>Claim III: Violation of Procedural Due Process</u>

Plaintiff repeats his contentions regarding his housing in "multi-use" rather than "outpatient" facilities, and regarding the requirement that he follow "onerous and punitive requirements" that restrict his liberty.  Compl. at 33.  As these claims were rejected above, they are also rejected here.

F.   <u>Claim IV: Violation of Equal Protection</u>

Plaintiff contends that he has more onerous restrictions on his liberty than do his counterparts who are on mandatory supervision and parole, and that the differences amount to a violation of his Fourteenth Amendment right to equal protection under the laws.  The equal protection clause requires that "all persons similarly situated should be treated alike."  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). Because plaintiff is not a member of a protected or suspect class, he must allege that the regulation impinging on his rights is not rationally related to the state's interest in treating him and protecting the public.  <u>See</u> <u>Wottlin v. Fleming</u>, 136 F.3d 1032, 1036 (5th Cir. 1998) (stating that sex offenders are not a protected or suspect class, and thus a prison regulation that impinges on a convicted sex offender's constitutional rights is only subject to a rational basis review); <u>Stauffer v. Gearhart</u>, No. H-08-1587, 2011 WL 2490062 (S.D. Tex. June 20, 2011)

20

(applying Wottlin to a sex offender treatment program).
Plaintiff has again made only conclusory allegations regarding
the disparity between his treatment and that of unnamed other
individuals, has alleged nothing to show that he and the other
individuals are similarly situated other than that they reside in
the same facility, and has alleged nothing that can state a
plausible claim for an equal protection violation.

G.   Claim V: Deprivation of Liberty and Property Interest

Plaintiff repeats his grievances about being subjected to
felony prosecution for violating civil commitment rules, and
claims that section 841.085 of the Texas Health and Safety Code,
providing for such prosecution, is vague and overbroad.
Plaintiff also contends that defendants interfered with his right
to privacy and association by prohibiting plaintiff from
"engaging in consensual, intimate relationships," and by
restricting plaintiff's contact with family and friends.   Compl.
at 35.   Next, plaintiff complains that an insufficient period of
time is allotted for non-emergency medical visits, and
individuals must sometimes return to the facility before
receiving medical treatment, and that he was delayed in receiving
necessary dental treatment.   Finally, plaintiff contends that he
lacks adequate access to a law library.

First, as to plaintiff's vagueness and overbreadth

21

challenge, courts have already determined that section 841.085 is neither vague nor overbroad.  See In re Commitment of Fisher, 164 S.W.3d 637 (Tex. 2005); In re Commitment of Browning, 113 S.W.3d 851 (Tex. App.--Austin 2003, pet. denied); Petersimes v State, No. 05-10-227-CR, 2011 WL 2816725 (Tex. App.--Dallas July 19, 2011, pet. ref'd) (listing additional cases).  The only support plaintiff purports to offer for his contention that section 841.085 is vague and overbroad is that plaintiff is subjected to "constant written and verbal threats of prosecution."  Compl. at 35.  Plaintiff alleges no additional facts to support this claim, and the claim has no merit.

Next, plaintiff's argument that defendants are unconstitutionally restricting his right to engage in relationships with others and to associate with whom he chooses also fails.  As discussed in plaintiff's grievances regarding facility conditions, the restrictions on plaintiff's relationships clearly bear a reasonable relation to the purposes of treating plaintiff's disorder and protecting others from plaintiff.

Plaintiff's allegation regarding non-emergency medical care fares no better.  Plaintiff alleges no actual injury, and admits that there was no immediate necessity for medical care.  He claims defendants were deliberately indifferent to his medical

needs, and cites <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), for such a proposition.[5]  However, <u>Estelle</u> stands for the proposition that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  <u>Id.</u> at 104.  "Deliberate indifference is an extremely high standard to meet." <u>Domino v. Tex. Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001).  An official acts with deliberate indifference only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  A delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and the delay results in substantial harm.  <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993).  <u>See also</u> <u>Smith v. Harris</u>, 401 F. App'x 952, 953 (5th Cir. 2010) (finding no deliberate indifference when officials failed to prescribe pain medication for dental care).

Plaintiff has alleged no facts with regard to his claim that there was insufficient time allotted for non-emergency medical

---

[5]  Plaintiff does not specifically allege an Eighth Amendment violation, but specifically refers to "deliberate indifference" and asserts claims based on lack of medical and dental care.  Therefore, the court construes these claims as Eighth Amendment claims.

appointments that can meet the deliberate indifference standard, as he alleges nothing to show that his medical needs were serious, or that he faced the risk of substantial bodily harm. Plaintiff does relate some specific facts regarding his broken tooth and the denial of emergency dental care; however, his allegations are insufficient to state a claim for deliberate indifference to his serious medical needs. He makes no allegations that Lemon was aware of any excessive risk of serious harm, or that the delay in visiting a dental clinic or receiving medication resulted in any substantial or lasting harm to him.

Plaintiff's claim that he did not have access to an adequate law library also fails. Access to the courts "encompasses only a reasonably adequate opportunity to file non-frivolous legal claims." Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). In Lewis v. Casey, 518 U.S. 343, 351 (1996), the Court held that an inmate must demonstrate that the alleged shortcomings of the complained-of facility hindered his efforts to pursue a legal claim. See also Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (inmate alleging lack of access to the courts must demonstrate actual injury). To prevail on his claims, plaintiff "must have demonstrated that his position as a litigant was prejudiced by his denial of access to the courts." Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996). Plaintiff has not

alleged facts that show he has been hindered in pursuing his lawsuit, that he was prevented from filing suit, or that he was prejudiced.  On the contrary, plaintiff has filed numerous documents and motions, in addition to the forty-nine page complaint he filed to pursue his claims in this action.

H.  <u>Claim VI: Retaliation for Exercising Constitutional Rights</u>

Plaintiff repeats his dissatisfaction with his arrest and prosecution, alleging that Basham retaliated against him because plaintiff "made it known" that he was seeking legal remedies against Avalon and because plaintiff sought to clarify the rules in the Fort Worth facility before signing the intake paperwork. Plaintiff alleges that Taylor retaliated against him by issuing a warrant for his arrest and subjecting him to malicious prosecution.  The court has covered this ground, and plaintiff's claim is meritless for reasons stated above.

I.  <u>Claim VII: Refusing or Neglecting to Prevent the Unlawful Deprivation of Plaintiff's Civil Rights</u>

Plaintiff alleges that all defendants in this action were acting under the direction and control of Taylor, and appears to be trying to allege Taylor's liability on a respondeat superior basis for plaintiff's entire collection of grievances.  However, § 1983 does not authorize liability on such a basis.  <u>See</u> <u>Alton v. Tex. A&M Univ.</u>, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the

direct acts or omissions of government officials, not the acts of
subordinates, will give rise to individual liability under §
1983"); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987)
("Under section 1983, supervisory officials are not liable for
the actions of subordinates on any theory of vicarious
liability."). Liability for violation of rights under § 1983,
regardless of the particular constitutional theory, must be based
upon personal responsibility. See Murphy v. Kellar, 950 F.2d
290, 292 (5th Cir. 1992). Plaintiff has alleged no facts for
this claim, but simply contends that Taylor is responsible for
the alleged violations committed by other defendants. Thus, to
the extent plaintiff seeks to impose liability on Taylor solely
based on her role as a supervisor, he is barred from doing so,
and his claim fails.

J.    State Law Claims

Plaintiff alleges state law claims for (1) failure to
provide outpatient conditions and treatment as required by the
Texas Health and Safety Code; (2) unlawful confinement; (3)
unlawful arrest and confinement for exercising his First and
Fourteenth Amendment rights; and (4) retaliation for plaintiff's
exercise of his constitutional rights and subjected to malicious
prosecution. However, the Ex Parte Young exception, allowing a
suit against a state official for prospective injunctive relief

for violations of federal rights, does not apply when a plaintiff
seeks to vindicate state rights against a State in federal court.
Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104-06
(1984).  In Pennhurst, the Court stated:

> A federal court's grant of relief against state
> officials on the basis of state law, whether prospective
> or retroactive, does not vindicate the supreme authority
> of federal law. On the contrary, it is difficult to
> think of a greater intrusion on state sovereignty than
> when a federal court instructs state officials on how to
> conform their conduct to state law. Such a result
> conflicts directly with the principles of federalism
> that underlie the Eleventh Amendment. We conclude that
> Young and [Edelman v. Jordan, 415 U.S. 651 (1974)] are
> inapplicable in a suit against state officials on the
> basis of state law.

Id. at 106.  Thus, to the extent plaintiff seeks relief in this
court against state officials for violations of state law, such
relief is barred by the Eleventh Amendment, and plaintiff's state
law claims must be dismissed.[6]

---

[6]  The court notes that, even if plaintiff's claims were not barred by the Eleventh Amendment,
the claims are meritless under state law and should still be dismissed.  Plaintiff renews his grievances
regarding the rules of his civil commitment, his confinement in secure facilities, and the arrest and
prosecution he faced as a result of violating the terms of his commitment.  All of the actions of which he
complains are in accordance with Texas law, as described in Chapter 841 of the Texas Health and Safety
Code, and as interpreted by case law in Texas. E.g. Fisher, 164 S.W.3d 637.

V.

## Order

Therefore, the court ORDERS that all claims and causes of action asserted by plaintiff against all defendants be, and are hereby, dismissed with prejudice.

SIGNED March 14, 2013.

_____
JOHN McBRYDE
United States District Judge