IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| CLARENCE D. BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:12-CV-698-A |
| | § | |
| ALLISON TAYLOR, ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendants Tarrant County, Texas ("County"), and Dee Anderson ("Sheriff") to dismiss. Also came on for consideration the motion of plaintiff, Clarence D. Brown, for leave to file third amended complaint and/or supplement to plaintiff's second amended complaint. The court, having considered the motions, the responses, the replies, the record, and applicable authorities, finds that the motion to dismiss should be granted and that the motion for leave to amend should be denied.

I.

Background

On October 1, 2012, plaintiff filed his original complaint in this action complaining of his treatment as a civilly committed sexually violent predator between 2011 and 2012. Doc.[1] 1. The court dismissed plaintiff's claims, Docs. 17 & 18, and

---

[1]The "Doc.\_\_" reference is to the number of the item on the docket in this action.

plaintiff appealed. Doc. 21. The United States Court of Appeals for the Fifth Circuit vacated the judgment and remanded the action for further proceedings. Docs. 45 & 46. On October 26, 2016, plaintiff filed his amended complaint. Doc. 55. By order and final judgment signed October 27, 2016, court ordered a dismissal of certain claims and parties, Docs. 57 & 58, and, by memorandum opinion and order and final judgment signed November 4, 2016, the court dismissed the remaining claims asserted by plaintiff. Docs. 62 & 63. The court also denied plaintiff leave to file a further amended complaint (which had been filed November 3, 2016, Doc. 60, and which although titled both "original" and "first amended" complaint was actually the second amended complaint). Doc. 61. Plaintiff again appealed. Doc. 64. The Fifth Circuit affirmed in part, vacated in part, and remanded for further proceedings. Doc. 72.

Pursuant to the Fifth Circuit's mandate, plaintiff was allowed to proceed with his second amended complaint.[2] The only claims that remain pending are plaintiff's due process claims against Sheriff and County, and a retaliation claim against Greg Basham.[3] Doc. 72; Doc. 73.

---

[2] By order signed January 7, 2019, the court ordered that the second amended complaint received from plaintiff on November 3, 2016, be deemed filed as of that date. Doc. 73.

[3] The claim against Basham is not at issue here.

II.

## Grounds of the Motion to Dismiss

County and Sheriff assert three grounds in support of their motion. First, Sheriff is entitled to qualified immunity. Second, plaintiff has failed to plead sufficient facts to establish a plausible municipal liability claim against County. And, third, service of process on Sheriff was defective.[4]

III.

## Applicable Legal Standards

A. Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court

---

[4]The court does not reach this ground.

3

must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

B.  Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights

4

of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 136 S. Ct. 305, 308 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th

Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. . . .

502 U.S. at 229. Further, that the officer himself may have created the situation does not change the analysis. That he could

have handled the situation better does not affect his entitlement to qualified immunity. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. White v. Pauly, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. Id. at 552. Thus, the failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. Id.; Surratt v McClarin, 851 F.3d 389, 392 (5th Cir. 2017).

C. County Liability

A governmental entity, such as County, can be subjected to monetary damages or injunctive relief only if one of its official policies caused a person to be deprived of a federally protected right. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

County cannot be held liable under a theory of respondeat superior or vicarious liability. Id. Instead, liability may be imposed against a local government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell, 436 U.S. at 692) (internal quotation marks omitted). To hold County liable under § 1983 thus requires plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." Spiller v. City of Texas City, Police Dep't, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted). Therefore, liability against local government defendants pursuant to § 1983 requires proof of a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

IV.

Analysis

The claims at issue are that Sheriff and County violated plaintiff's due process rights when they confined him in the Cold Springs Jail for a period of twenty days following his posting of bond and before commencement of sex offender treatment. Doc. 72 at 11. According to the Fifth Circuit, plaintiff "stated a cognizable due process claim that his post-bond confinement . . . was not reasonably related to supervision and treatment." Id. Because the State confined plaintiff without treatment and Sheriff and County "agreed to confine [him]" at the Cold Springs

9

Jail, plaintiff had pleaded sufficient allegations to raise his right to relief above the speculative level.[5] Id. at 12.

In its opinion, the Fifth Circuit recognized that the State was responsible for providing plaintiff sex offender counseling and treatment. Doc. 72. Further, plaintiff, as a civilly committed person, was required to reside in a Texas residential facility under contract. Id. Plaintiff does not dispute that Cold Springs Jail is such a facility pursuant to a memorandum of understanding between State and County (the "MOU").[6] Doc. 98 at 2-3; Doc. 83, Ex. 7. He claims that he should not have been confined in such facility from September 13, 2012, after he posted bond, until October 3, 2012, when he began receiving sex offender treatment.

Sheriff contends that he is entitled to qualified immunity. As the record reflects, and the Fifth Circuit acknowledged, the place of plaintiff's placement was determined by the State. Plaintiff himself pleaded that his sex offender counselor conveyed to plaintiff that he would remain within County

---

[5] Unfortunately, the opinion does not explain how or why Sheriff or County could be held liable for State's failure to provide sex offender treatment.

[6] In a "cross-reply" filed April 29, 2019, plaintiff attempts to change his argument, contending that the Cold Springs Jail is not a Texas residential facility as defined in the state statute regarding sex offenders. However, plaintiff did not obtain leave to file, and the court does not consider, a sur-reply. The court notes, in any event, that one of the cases cited in the sur-reply supports the conclusion that Sheriff is entitled to qualified immunity. See Porter v. Epps, 659 F.3d 440 (5th Cir. 2011).

facilities until his criminal matter was concluded.⁷ Doc. 60, ¶ 46. Plaintiff made no allegation that Sheriff had any personal involvement in his confinement other than to receive a court order and agree to confine plaintiff.⁸ Id. ¶ 46. Nor did he allege any facts to show that Sheriff knew that he could not confine plaintiff under the circumstances.

Plaintiff argues that "once he made bail," Sheriff "had a duty to release Plaintiff from his jail." Doc. 98 at 6. However, as the Fifth Circuit recognized, pursuant to Texas law at the time, plaintiff was required to reside in a Texas residential facility under contract. Doc. 72 at 3. He could not be released on his own recognizance. Id. at 11. Plaintiff was confined in the Cold Springs Jail and sex offender counseling and treatment were not provided for a period of twenty days, but no facts are pleaded to even suggest that this was the fault of Sheriff or that he had any reason to believe that plaintiff could not legally be confined there. The only case that plaintiff cites to support the proposition that Sheriff could not legally confine him in the Cold Springs Jail, Lynch v. Baxley, 744 F.2d 1452 (11th Cir. 1984), has no relevance to his case as it concerned

---

⁷After plaintiff posted bond, he was transferred from the Tarrant County Jail to the Cold Springs Jail. Doc. 60, ¶ 45. Plaintiff suggests that the transfer was pursuant to a court order. Id. ¶ 46.

⁸Plaintiff alleges that he sent letters to Sheriff and County in late October complaining of being unlawfully confined, but this would have been after the time period at issue. Doc. 60, ¶ 56.

11

the constitutionality of Alabama's civil commitment procedures. In Lynch, the Eleventh Circuit forbade the use of jails for the purpose of detaining persons awaiting involuntary civil commitment proceedings. 744 F.2d at 1463. Here, plaintiff had already been civilly committed under Texas law. The constitutionality of the Texas civil commitment statute had been upheld by the Texas Supreme Court. In re Commitment of Fisher, 164 S.W.3d 637 (Tex. 2005). And, the United States Supreme Court had repeatedly upheld civil commitment laws like those of Texas. See United States v. Comstock, 560 U.S. 126 (2010); Kansas v. Crane, 534 U.S. 407 (2002); Kansas v. Hendricks, 521 U.S. 346 (1997). Plaintiff has not cited, and the court is not aware of, any case holding that a sheriff could not confine a civilly committed person in a county facility pursuant to a contract with the state after the person had posted bond and was awaiting trial for a brief period of time until the state actually started providing sex offender treatment and counseling. Because the violative nature of the particular conduct was not clearly established, Sheriff is entitled to qualified immunity. Mullenix, 136 S. Ct. at 308; Zadeh v. Robinson, 902 F.3d 483, 493 (5th Cir. 2018).

With regard to County, plaintiff alleges that the violation of his due process rights was a result of policy, the MOU. Doc.

98 at 7. He argues that the MOU required that he be denied bail and that it was "clearly the moving force behind the constitutional violations," but does not explain how this is so. Id. The court does not find such a provision in the MOU. Doc. 83, Ex. 7. As the MOU reflects, County provided housing in the Tarrant County Adult Detention System Work Release Program[9] and food at a rate of $70.00 per day for civilly committed sex offenders. Id., DA 0091, DA 0092. State was responsible for obtaining and paying for all programs required for such offenders. Id. DA 0093. Because there is no affirmative link between the MOU and the alleged violation of plaintiff's constitutional rights, County cannot be held liable. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). As another court has noted, "local governments can never be held liable under § 1983 for the acts of those whom the local government has no authority to control." Turquitt v. Jefferson Cty., 137 F.3d 1285, 1292 (11th Cir. 1998). In Texas, the state is responsible for treatment and supervision of civilly committed violent sex offenders. Tex. Health & Safety Code Ch. 841.

---

[9]A transcript excerpt from plaintiff's underlying state court proceeding of which plaintiff requested the Fifth Circuit to take judicial notice reflects that plaintiff was not "in jail" but housed in the Cold Springs facility because he was on bond and the State had a contract to house him there. Plaintiff was housed as a resident, not an inmate. Doc. 83 at DA 0112.

At best, plaintiff has pleaded an isolated incident that is insufficient as a matter of law to establish liability on the part of County. Tuttle, 471 U.S. at 821-22; Davidson v. City of Stafford, 848 F.3d 384, 396 (5th Cir. 2017); Batiste v. Theriot, 458 F. App'x 351, 358 (5th Cir. 2012).

V.

Plaintiff's Motion for Leave to Amend

A month after Sheriff and County filed their motion to dismiss, and plaintiff had been granted an extension of time to respond, Doc. 95, plaintiff filed a motion for leave to file third amended complaint and/or supplement to plaintiff's second amended complaint. Doc. 96. Plaintiff contends that he should be allowed to amend or supplement his second amended complaint in light of the MOU included as an exhibit to the motion to dismiss. Id. at 1. He does not offer any other reason for wanting to amend.

As defendants point out, there has been no change in circumstances that would justify filing of a supplement. Fed. R. Civ. P. 15(d). The MOU was entered into years ago and is a public document plaintiff could have obtained. Nor do the interests of justice require amendment to be allowed. Fed. R. Civ. P. 15(a)(2). This action has been pending a number of years and plaintiff has had a fair opportunity to make his case. The Fifth

14

Circuit has already considered plaintiff's claims and determined which of them are potentially viable.[10] Plaintiff cannot now circumvent those rulings by amending. See USPPS, Ltd. v. Avery Dennison Corp., 647 F.3d 274, 282 (5th Cir. 2011). Further, amendment of the complaint would be futile inasmuch as Sheriff is entitled to qualified immunity and plaintiff has not established a basis for County to be held liable. Plaintiff apparently did not raise on appeal the viability of any state law claims and the Fifth Circuit did not recognize any state law claims as being viable. See Doc. 72 at 7 n.5 (issues not raised on appeal are waived). For the reasons discussed in the response to the motion for leave to amend, amendment to include state law claims would be futile in any event. Doc. 97 at 9-10.

VI.

Order

The court ORDERS that the motion to dismiss be, and is hereby, granted, and plaintiff's claims against Sheriff and County be, and are hereby, dismissed.

The court further ORDERS that plaintiff's motion for leave to amend be, and is hereby, denied.

---

[10] The court notes that the allegations in the second amended complaint are substantively identical to those in the first amended complaint analyzed by the Fifth Circuit.

15

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of plaintiff's claims against Sheriff and County.

SIGNED May 16, 2019.

_____
JOHN McBRYDE
United States District Judge